# Scott *v*. The State.

*Indictment for Carrying Concealed Weapons.*

1. *Jeopardy; when not shown; facts in the case.*—Under the plea of former jeopardy on a trial for carrying concealed weapons, the following facts appeared: There were upon the docket two cases against the defendant, entitled alike, one immediately following the other; the first one being for carrying concealed weapons (the present case), and the second, a felony. The judge called one of the cases, but did not specify either by its number or otherwise which case was called. The State announced ready, as did the defendant, after the solicitor agreed to admit the showing of his absent witnesses. A jury was impannelled from the juries for the week, each side having exercised the

[Scott v. The State.]

right of challenge. The solicitor then read the indictment for carrying concealed weapons, whereupon the defendant objected and stated that he was not being tried under that indictment, but under the indictment charging a felony, and that the showing which was admitted by the State was in the felony case; and that he was not ready for trial in the case for carrying concealed weapons. The court stated that he had called the felony case; but upon the insistence of the solicitor that the cases be tried in their order on the docket, the court, after requiring the defendant to make a showing in the case for carrying concealed weapons, proceeded to the trial of such case, and at the instance of the defendant discharged the jury selected for the felony case, and there was then selected another jury, both the State and the defendant again exercising the right of challenge. *Held:* That such facts under the plea of former jeopardy did not show that the defendant had been placed in jeopardy; and that it was proper for the court to charge the jury that if they believe the evidence they should find the issue on the plea of former jeopardy in favor of the State.

2. *Carrying concealed weapons; when particulars of an affray admissible.*—Under the provisions of the statute (Code of 1886, § 3775), that a defendant prosecuted for carrying concealed weapons may show that at the time of carrying the weapon concealed he had good reason to apprehend an attack, on a trial charging such offense, the particulars of an affray between the defendant and another person, tending to show occasion for apprehension on the part of the defendant that such person was pursuing or would immediately pursue and attack him, is admissible in evidence for the consideration of the jury in determining whether the defendant had such apprehension and carried the weapon in consequence thereof.

3. *Same; irrelevant evidence.*—On a trial under an indictment for carrying concealed weapons, evidence of what was done to the defendant after he was arrested on such charge, is irrelevant and inadmissible.

4. *Same; same.*—On a trial under an indictment for carrying a concealed weapon, evidence that the defendant was carrying a weapon concealed about his person, though it was obtained in the unlawful search of the defendant after his arrest upon another charge, is admissible; and the fact that the person arresting the defendant and making such search was unauthorized thereto, is irrelevant evidence, and such fact does not justify the defendant's acquittal.

5. *Evidence; when permissible to show that witness has been driven away.*—In a trial of a criminal case, it is permissible to show that the principal witness for the State had driven a witness for the defendant away, provided it be shown, inferentially or otherwise, in that connection, that such conduct on the part of the State's witness had any relation to the case at issue; the fact of the witness having been driven away being admissible in evidence as tending to show the *animus* of the State's witness against the prisoner.

[Scott v. The State.]

APPEAL from the Circuit Court of Madison.

Tried before the Hon. H. C. SPEAKE.

The appellant was indicted, tried and convicted for carrying a pistol concealed about his person.

The defendant pleaded former jeopardy, and issue was joined upon said plea, which was submitted to the jury upon the following agreed statement of facts : "The defendant had two indictments pending against him, one for carrying a concealed pistol, No. 5203, and one for an assault with intent to murder, No. 5211. When the case against defendant was called on February 26th, 1896, he was called around by name without designating which case was to be tried. The State announced ready, and defendant's attorneys asked the court for time, in which to take depositions of absent witnesses, whereupon the court put the defendant on showings for his witnesses, against his objection and exception. The defendant's attorneys then prepared showings for said witnesses and submitted them to the solicitor. Court then adjourned, and next morning, February 27th, the solicitor announced that he would admit the showings, and a jury was then ordered by the court to take their places in the box, and a jury was then selected to try defendant; after several challenges on both sides, the solicitor and defendant's attorneys announced that they were satisfied with the jury. The solicitor then read to the jury the indictment, No. 5203 (the case for carrying concealed weapons). * * * The· defendant declined to plead to this indictment, but contended that he had been called for trial in the case of an assault with intent to murder, and had been put on showings in that case, and insisted upon a trial in that case. The court told the solicitor that the case he called was the assault with intent to murder case, and the solicitor said that he was mistaken about the case called, as the pistol case came first on the docket. The court then told defendant's attorneys that as the solicitor seemed to be mistaken they would have to prepare showings in the pistol case. The defendant and his attorneys then retired from the room and prepared showings, which the solicitor admitted. The court asked the defendant's attorneys if they wanted to try the case with the jury then in the box, and one of defendant's attorneys replied : 'No, that he would like to have another challenge.' The court then said : 'Let

[Scott v. The State.]

that jury stand aside and we will start over.'   Another jury was then selected, State and defendant challenging jurors, and the indictment read to them.   It was further agreed, and admitted that the defendant was the same James Scott who was before the jury first impannelled, and that the indictment in this case was the same indictment read to them.''

The State then introduced as a witness one John Moseley, who testified that he went to arrest the defendant, that he drew a shot gun on him and caused him to surrender, and that upon searching him he found two pistols concealed in his front pants pocket.   On cross-examination of this witness, he testified that he held no public office in the county.   He was then asked: ''Did you have any authority to arrest the defendant?''   The State objected to this question, which objection the court sustained, and the defendant duly excepted.   Thereupon the witness was asked the following question : ''Did you not have a difficulty with the defendant a short time before you found the pistol on his person?''   The witness answered that the defendant had had a difficulty with him about 15 or 20 minutes before he, the witness, arrested the defendant.   The witness was then asked several questions, which sought to show that at the time he had the difficulty with the defendant, he climbed into the defendant's wagon and tried to cut him with a knife, and that the defendant jumped from the wagon.   To each of the questions eliciting this evidence the State objected.   The court sustained each of the objections, and the defendant separately excepted.   This witness further testified that after arresting the defendant, he tied him and took him back to his house.   He was then asked by the defendant the following question : ''Did you knock the defendant down, stamp him with your feet, and stick him in the head with a knife after you had tied him?''   The solicitor objected to this question, which objection the court sustained, and the defendant duly excepted.   There was other evidence tending to corroborate the testimony of this witness.

The evidence for the defendant further tended to show that he and two other negroes were riding along a public road by the witness Moseley's house in a wagon, and one of the negroes, named Saint Wells, fired a pistol, and thereupon Moseley rushed out from his house,

jumped into the wagon, and cursing the negroes for shooting along the public road, tried to cut the defendant; that the defendant jumped out of the back of the wagon, and as he did so, he picked up two pistols which were lying in the back of the wagon, and stuck them in his pocket, and that about 15 or 20 minutes afterwards Moseley arrested the defendant while the pistols were still in his pocket, but were not wholly concealed.

Upon the examination of the witness Moseley, in rebuttal, his testimony was in conflict with that of the defendant as above stated. The solicitor asked the witness the following question: "Have you seen Saint Wells since that day?" The defendant objected to this question, which objection the court overruled, and the defendant duly excepted. The witness answered that he had not seen him since. On the cross-examination of the witness, he was asked: "If he did not run John Buchanan, one of the negroes who was with the defendant in the wagon, away from Huntsville?" The solicitor objected to this question, the court sustained the objection, and the defendant duly excepted.

Upon the introduction of all the evidence, the defendant requested the court to give to the jury the following written charges, and separately excepted to the court's refusal to give each of them as asked: (1.) "If the jury believe the evidence, they must find the defendant not guilty." (2.) "If the jury believe from the evidence that John Moseley was without authority to arrest the defendant, they must find the defendant not guilty." (3.) "If the jury believe from the evidence that John Mosely was a private citizen and without authority to make an arrest at the time he arrested and searched the defendant, they must find the defendant not guilty."

GRAYSON & FOSTER, for appellant.

WILLIAM C. FITTS, Attorney-General, for the State. 1. It was not shown that the defendant had been placed in former jeopardy, and the general affirmative charge in favor of the State on the plea of former jeopardy was properly given.—*Scott v. State*, 110 Ala. 48.

2. Evidence as to the particulars of a quarrel and difficulty between the State's witness and the defendant, which led up to the discovery of the pistol upon the de-

[Scott v. The State.]

fendant, was inadmissible in evidence.—*Berney v. State*, 69 Ala. 233.

3. The charges asked by the defendant were properly refused. The fact that the pistols were found upon a seizure and search of the person of the defendant does not relieve him from guilt of the charge of carrying a concealed pistol.—*Chastang v. State*, 83 Ala. 29 ; *Terry v. State*, 90 Ala. 635 ; *Scott v. State*, 94 Ala. 80 ; *French v. State*, 94 Ala. 93 ; *Sewell v. State*, 99 Ala. 183.

McCLELLAN, J.—The trial court properly charged the jury to find the issue on the plea of former jeopardy in favor of the State, if they believed the evidence. *Scott v. State*, 110 Ala. 48.

A defendant prosecuted under section 3775 of the Code "may give in evidence that, at the time of carrying the weapon concealed, he had good reason to apprehend an attack, which the jury may consider in mitigation of the punishment, or justification of the offense." The particulars of the affray between Moseley and the defendant's party in the wagon, when taken in connection with defendant's evidence that he did not have the pistols about his person until he fled from the wagon, &c., &c., tended to show occasion for apprehension on the part of the defendant that Moseley was pursuing, or would immediately pursue and attack him, and should have been received for the consideration of the jury in determining whether the defendant had such apprehension, and carried the weapons in consequence of it.

What Moseley did to Scott after the arrest was properly excluded.

It was no objection to the evidence showing that Scott had pistols concealed about his person that it was obtained, assuming it to have been obtained, in an unlawful search of the prisoner. Hence, the testimony offered to show that Moseley was without authority to arrest and search Scott was properly excluded ; and the charges requested in respect to his want of authority to arrest and search the defendant were properly refused.

We are unable to see any pertinency in the fact, that Moseley had not seen Saint Wells since the day of Scott's arrest, had to any issue in the case. It should not have been admitted in evidence.

If in connection with the fact, if it be a fact, that

Moseley ran "Johnston Buchanan away from Hunts-ville," it be made to appear, inferentially or otherwise, that that conduct on Moseley's part had any relation to this case—as, for instance, that Buchanan was made to leave to keep him from testifying for the defendant—the fact itself should be received in evidence as tending to show the *animus* of Moseley, a witness against the pris-oner.

Reversed and remanded.