148 So. 172

### CLINE v. STATE.
6 Div. 278.

Court of Appeals of Alabama.
May 9, 1933.

Ross, Bumgardner, Ross & Ross, of Bessemer, for appellant.

Thos. E. Knight, Jr., Atty. Gen., for the State.

No brief reached the Reporter.

SAMFORD, Judge.

From the undisputed evidence it appears that on the night of July 10. 1931. the plant of the Pure Milk Company was destroyed by the explosion of a dynamite bomb, consisting of twenty-five sticks of dynamite, prepared by R. A. Bridges and Burge Gilpin and thrown into the front of the building of the Pure Milk Company by Bridges; that the explosion wrecked the building and killed Edward Merkestyn and injured several others. The

436

evidence further tends to prove, and indeed is not denied, that the act was carefully planned and executed according to a deliberate, formed design evidencing such a depraved mind and reckless disregard for human life as that the slaying of Merkestyn is murder in the first degree. Bridges v. State, 225 Ala. 81, 142 So. 56.

So far as the corpus delicti is concerned a fair statement of the facts may be found in the reported case of Bridges v. State, 225 Ala. 81, 142 So. 56, and in that case all necessary questions relating to the commission of the crime by Bridges have been passed upon. The crime, therefore, with all of its heinousness having been proven, none of the rulings touching its consummation could possibly injuriously affect this defendant except such as tend to connect this defendant with Bridges in his hellish design.

■ It having been determined that the deed was committed by Bridges and that Gilpin and McAvoy were particeps criminis, the question to be determined in the instant case is, whether or not this defendant aided or abetted in the concoction of the plan to explode the bomb in the plant of the Pure Milk Company. For if this defendant, by word or deed, aided or abetted in the preparation of the bomb thrown by Bridges into the building of the Pure Milk Company or in any way gave encouragement to the unlawful act, which resulted in the death of deceased, she would be just as guilty as Bridges. Code 1923, § 3196; Sullivan v. State, 23 Ala. App. 10, 119 So. 243; 39 Corpus Juris, 1073 (46) (bb); Ex parte Lawrence, 21 Ala. App. 537, 109 So. 615.

■ In proof of the participation of this defendant in the plot to bomb the Pure Milk Company's plant, the inquiry must of necessity take a wide range. Many acts and doings of defendant and those associated with her, which of themselves may appear innocent enough, may, when linked with others, construct a chain of circumstances thoroughly convincing of the guilt of defendant. Any fact or circumstance, either direct or circumstantial, tending to establish a concurring agreement to carry into effect a common purpose to commit the crime, or which tends to prove that defendant aided or abetted in preparation for the crime is relevant and admissible. Lancaster v. State, 21 Ala. App. 140, 106 So. 609.

■ It may here be said that in the development of a case based upon circumstantial evidence, the whole testimony cannot be presented at one time, but piece by piece and link by link, each link having relation to that preceding it. If when the evidence is complete there is a missing link, the court should on motion exclude the whole, but in the progress of development the court must allow great latitude.

■ It is contended by appellant that there is no sufficient evidence that the defendant was an accomplice of Bridges et al. As to this there was evidence tending to prove that this defendant and her daughter were living in a small house in Huffman, a suburb of Birmingham; that the kitchen and dining room were one and the same; that on the night of July 10th, Gilpin and Bridges brought a box containing fifty pounds of dynamite sticks into the house, set it down in the kitchen-dining room while Bridges, Gilpin, McAvoy, defendant, and her daughter were eating supper; after supper the box of dynamite was opened with a hammer there in the kitchen, twenty-five sticks of the dynamite taken out, made into the bomb, by putting fuses and caps into two of the sticks, tying the sticks together, fastening a brick to one end, and wrapping the whole with paper. While preparing the bomb, Gilpin cut a short piece of fuse from a longer piece and threw the long piece upon the roof of the back porch, taking the short piece with which to fix the bomb. While the making of the bomb was in progress, this defendant was present. When the bomb was completed, all of the parties left the house together, Bridges bringing the bomb and placing it on the back seat of McAvoy's car, then with Gilpin and defendant in one car and McAvoy, Mrs. Chambers, and Bridges in another car the whole party left the house together going to Birmingham. After getting to Birmingham, Gilpin got in the car with Bridges and the others with the other car went on to St. Vincent's Hospital where they were when the explosion took place. After Bridges had thrown the bomb, they went directly to St. Vincent's Hospital where all the parties met as had been prearranged. Leaving St. Vincent's Hospital the party traveling in the two cars drove to the Ritz Pool Room, where Bridges bought a newspaper, and then all of the parties repaired to the Cline home, where Bridges read aloud to the party the report in the newspaper of the bombing, upon which defendant commented: "It was a pretty smooth job; got away all right."

The foregoing evidence, together with some minor details not mentioned, was sufficient, if believed beyond a reasonable doubt to connect the defendant as an accomplice. It is inconceivable that in the midst of all the unusual activity at defendant's home and in her very presence, incident to the making of the bomb, the preparation for the trip to town, the changing of places in the automobiles, the separation at the time of the explosion, the rendezvous immediately afterwards, the return of the party to defendant's home, the interest shown by her in the newspaper account of the crime, her expression of approval of the "get away," that the defendant could have remained in ignorance of the contemplated crime and its execution, and the lending of her presence in it all might

well lead the jury to the conclusion that she was aiding and abetting in whatever was done.

■ The foregoing facts and inference tending to connect defendant with the commission of the crime charged depend upon the testimony of Gilpin, an acknowledged accomplice, whose testimony must be corroborated in order to justify a conviction (Code 1923, § 5635), and McAvoy, who may or may not be an accomplice according to the finding of the jury. If the jury believe from the evidence that McAvoy was an innocent party in the transaction and neither aided nor abetted in the crime charged, then and in that event his testimony in corroboration of the testimony of Gilpin would be sufficient upon which to base a verdict of guilt in this case. Morris v. State, 17 Ala. App. 126, 82 So. 574.

■■ It is insisted also by the state and contra by the defendant that the testimony of Gilpin is corroborated by the witness Sandefer, a police officer of the city of Birmingham, in a material particular. After giving testimony tending to show that he and Bridges had made the bomb at the home of this defendant and some testimony tending to show knowledge of its making by this defendant, Gilpin testified: "I threw the fuse I cut off, from the long piece upon a little offset there on the back porch of this defendant's house." Sandefer was then permitted to testify for the state, over legal objection and exception, that twelve days after the bombing he went to defendant's house, made a "pretty thorough" search, and found two pieces of dynamite fuse on top of the back door, up over the back door, and this was rolled up and stuck up under the shingles of the roof of the porch. The rule as to the necessary corroboration of an accomplice warranting a conviction, is that the corroborative testimony must tend to connect the defendant with the commission of the offense. Code 1923, § 5635; Lotz v. State, 23 Ala. App. 496, 129 So. 305; Morris v. State, 17 Ala. App. 126, 82 So. 574. Conceding that the finding of the piece of dynamite fuse may have been evidence against Gilpin, its finding did not tend to connect this defendant with the commission of the crime.

■ It is insisted that evidence obtained by a search of the house and premises where defendant was living is illegal and inadmissible because the search itself was illegal. Such is the law in some jurisdictions but not in Alabama. Since the case of Scott v. State, 113 Ala. 64, 21 So. 425, it has been held that evidence, though obtained in an illegal manner, is admissible on the trial of a criminal case. Vol. 7, Ala. & So. Digest, 368 ☞394.

■ According to the evidence in this record there was room for legal inference that the bomb used to destroy the Pure Milk Company was prepared by Bridges and Gilpin in the home of this defendant with her knowledge and encouragement; that she knew the purpose and the plan; that it was to begin at her home, proceed to the Pure Milk Company plant; that she and her daughter were to accompany the bombers, and while not actually to throw the bomb, to act as a cloak, to aid in the "get away" after the bomb was thrown and to end the adventure when all parties had returned to the home of defendant and separated. Everything said and done during that time by any of the parties and relating to the crime and tending to elucidate the action of the parties was a part of the res gestae and admissible in evidence as such. Durden v. State, 18 Ala. App. 498, 93 So. 342; Lancaster v. State, 21 Ala. App. 140, 106 So. 609. Where a declaration springs out of a transaction while the parties are still laboring under the excitement and strain of the circumstances and at a time so near it as to preclude the idea of deliberation and fabrication, it is to be regarded as contemporaneous within the meaning of the rule. Nelson v. State, 130 Ala. 83, 30 So. 728; Wesley v. State, 52 Ala. 182; Hardeman v. State, 14 Ala. App. 35, 70 So. 979; 16 Corpus Juris, 572 (1114) I. It follows from the above that the spontaneous expression of approval of "the smoothness of the job"; that "it was a slick job" and like remarks made by the defendant to Gilpin and the others on the way back to her home were admissible in evidence. So also, was the statement of Bridges made at defendant's home immediately after arrival and in the presence of the conspirators: "We are all guilty just the same on the charge."

■■ The defendant reserved an exception to the following excerpt from the court's oral charge: "It is for you to say whether or not he has been corroborated by other evidence which tends to connect this defendant with the commission of the crime." The rule is well established that, whether there is any evidence tending to corroboration is for the court. The probative force of such evidence is for the jury. The excerpt standing alone and as presented in the bill of exceptions appears to be error. Lotz v. State, 23 Ala. App. 496, 129 So. 305; Harris v. State, 21 Ala. App. 67, 105 So. 389.

Other excerpts from the court's oral charge to which exceptions were reserved, when taken and considered with the entire charge, are free from any prejudicial error.

There were two lines of inquiry followed by the state in the examination of C. H. Russell, a witness for the state, who designates himself as a private investigator and in this particular investigation in the employ of the city of Birmingham and reporting to Chief of Police McDuff. The direct examination of this witness consumes thirty pages of the transcript and half of the questions and answers are made the basis of objection and

exception. Some of these rulings of the court may constitute technical error, but none of such rulings, if error, were prejudicial in such sort as would justify a reversal. We do not therefore discuss each exception, but confine this opinion to the two general lines of inquiry allowed by the court.

■■ In the first instance the witness Russell was allowed to state in minute detail visits made by him and a man ·working with him, named Rodgers, to the home where resided this defendant and her daughter Mrs. Chambers. During these visits the confidence of the woman was gained and on the night of July 9th Russell and Rodgers went to call on the two women and there they met Bridges and in the conversation between them relative to a return of the two on the following night Bridges said he could not be with them on that night as he had an important matter to attend to and Mrs. Cline also declined to let Russell and Rodgers return on the next night, giving as an excuse that they had something important on hand that would prevent the engagement. During the visit Bridges went into the rear part of the house, called this defendant, conferred with her for a time, and then returned to the company, bade them good night and left, inviting Russell and Rodgers to come back, but not the next night. The details of these visits tended to show the close confidential relations existing between Bridges and this defendant and her daughter. After Bridges left, Mrs. Cline proposed a trip to Trussville where she wanted to see a party whom she had to see that night. Russell demurred, because they only had a Ford coupé, but defendant insisted and the two men and two women and a baby all crowded into the coupé and started. Mrs. Cline never named the party whom she wanted to see, but continued the trip and under the direction of defendant the car was deflected from Trussville to the home of a man named Sargent, where they stayed for ten minutes, from there, some miles to the Spotted Pig Café where they all got out and got some refreshments, and from there back to the home of this defendant.

Disconnected from other evidence all of the foregoing was irrelevant and immaterial, but after the bombing of the milk plant, the friendly relations between Russell and this defendant continued and when Bridges was arrested, charged with the crime, and defendant was under suspicion, defendant undertook to induce Russell to aid in establishing an alibi for Bridges by testifying that the trip detailed by Russell occurred on the night of July 10th instead of the 9th. It was relevant and admissible to prove that this defendant had attempted to induce Russell to swear falsely as to the alibi, and the details of the trip on the night of July 9th were necessary to a full understanding of the proposal. Without this evidence as to what

occurred on the night of July 10th the testimony as to what was said by defendant in an attempt to induce Russell to give perjured testimony would be unintelligible. 12 Corpus Juris, 633 (225) B. In addition to the fact that this was an attempt to procure perjured testimony, which alone would make the testimony admissible, the facts and circumstances detailed, when taken and considered with the other evidence in the case, tends to prove a guilty knowledge of the crime and a preparation for a defense before the crime was consummated. Leverett v. State, 18 Ala. App. 578, 93 So. 347.

■ In the second place, there having been evidence tending to connect this defendant with the conspiracy, testimony of her acts, doings and what she said, even remotely relating to the crime, from the inception of the conspiracy up to and including the return of the conspirators to defendant's home, was relevant as part of the res gestae and evidence after that time tending to prove defendant's continued activity in concealing the crime and her interest in the preparation of a defense for herself and Bridges, based upon false testimony and the collection of contributions from parties who, according to inferences to be drawn from her statements, were the instigators of the bombing of the milk plant, were all circumstances in the nature of admissions tending to connect this defendant with the conspiracy. Where the guilt of a defendant depends upon the intent, purpose, or design with which an act is done, or on his guilty knowledge thereof, even collateral facts in which he bore a principal part may be examined into for the purpose of establishing such guilty intent, purpose, design, or knowledge, if such collateral fact or facts have some connection with each other as a part of the same plan connected with the main crime. In cases of this kind the inquiry is wider than in any other and much must be left to the discretion and judgment of the trial judge, whose point of contact and opportunity for judgment is so much better than that of an appellate court. Bottomley v. U. S., 3 Fed. Cas. page 968, No. 1,688, opinion by Story. Of course, in the admission of such testimony care must be observed to exclude hearsay evidence.

■ There were some statements of defendant testified to by the witness Russell, objected to by defendant on account of a lack of a proper predicate, for the reason that such statements were in the nature of confessions or admissions tending to prove guilt. It is a rule well known that such confessions or admissions, to be admissible, must be shown to be voluntary, but there is another rule just as well settled that, when it clearly appears in the evidence from the attendant facts and circumstances that the statement was not made under the influence of either hope or fear, such statement is properly ad-

mitted. Henly v. State, 21 Ala. App. 259, 107 So. 801. In other words, the confession or incriminatory statement is presumed to be involuntary and inadmissible, but where the facts and circumstances surrounding such admission rebut any idea of fear or hope of reward there is no necessity for a laying of the formal predicate usual in such cases.

Charge No. 11 given at the request of the state is error in that it fails to limit the responsibility of each conspirator to the other to the time of the consummation of the common purpose. After a conspiracy is shown to have been formed by two or more persons and they have entered upon their unlawful purpose, the act of one is the act of all and is binding upon each until the unlawful purpose has been completed, but not afterward. De Bardeleben v. State, 16 Ala. App. 367, 77 So. 979.

Defendant's refused charge 42 is held to be confusing and misleading where there is more than one witness testifying to many facts. Baxley v. State, 18 Ala. App. 277, 90 So. 434; Ex parte Baxley, 206 Ala. 698, 90 So. 925.

We have considered the many other questions presented in this record as to charges given for the state and refused to defendant. When these charges are considered in connection with the very full and explicit charge of the court, it becomes very clear that the defendant received the benefit of every instruction to which she was entitled in the general charge of the court except as is hereinabove set out.

Rulings on the admission of testimony not herein passed upon will not probably arise on another trial.

For the errors pointed out the judgment is reversed and the cause is remanded.

Reversed and remanded.