The appellant, R.J. Bates, in this case was accused of procuring other people to commit a burglary, robbery, and murder. He was convicted by a Walker County jury and sentenced to life imprisonment. The single issue raised on appeal by counsel is whether the trial court erred in overruling appellant's motion to exclude state's evidence; appellant contends that the court did so err because of an alleged lack of corroborative testimony of accomplices McCullars and Culpepper.
The state's evidence tended to show that the appellant procured Steve "Red" McCullars to perform the robbery of Mr. Crump, a Jasper car dealer who, appellant believed, had stored a large quantity of money in a homemade safe in his home. McCullars *Page 2 
testified that appellant and McCullars drove from appellant's service station in Jefferson County, up to Jasper together with a Mr. Farley and cruised by Mr. Crump's residence two or three times. Appellant pointed out to the others that Crump lived on a dead end road and warned them not to speed when they returned to his service station after they committed the crime. Various people were discussed as potential participants in the actual robbery. Eventually, appellant got McCullars to pick up two women, Doris Long, a Birmingham prostitute and her 17-year-old roommate, Lori Culpepper. Appellant instructed the two girls that they were to tie up the victim, Mr. Crump, with a roll of silver duct tape. Appellant gave the silver duct tape and a loaded pistol to McCullars. The appellant then used his VISA card to rent a vehicle for use in the crime. Upon arriving at the Crump home, Doris and Lori knocked on the door and Mr. Crump answered. The three had a conversation, and the women entered. One of them was using the phone when McCullars knocked on the unlocked door, came into the house and pointed a gun at Mr. Crump. McCullars and Doris led Crump to the back bedroom while Lori stood watch. They taped Crump's mouth, his ankles, his wrists and hands, and his legs. They then attempted to pry open the safe, using the barrel of a rifle as a pry-bar. Doris went back into the bedroom to check on Crump, she said, only to discover that he was dead.
The three then appeared to have panicked and left the house. When they got back to appellant's service station, the following exchange occurred:
Appellant: "Did you get the money?"
McCullars: "No, the man died."
Appellant: "You're serious."
McCullars: "Yes, I'm serious. I think the man died."
Appellant: "You didn't get the money?"
McCullars: "No, sir."
Appellant: "Well, you can go back."
McCullars: "No, no way I'm going back."
 Appellant: "I have some bolt cutters, you can cut the bolts off that thing."
 McCullars: "No, sir, I don't want to go back. No way. No way at all."
McCullars gave appellant's pistol back to him, and the two females eventually left in their Volkswagen, but appellant said, "We're going to have to put these two girls in the creek." McCullars replied, "You might do it, but not me. I'm through with it. I'm going home."
Investigators summoned by the deceased's daughter who found him, found a .22 rifle and a single-barreled shotgun both with bent barrels, apparently used in attempting to break into the homemade steel safe.
Dr. Joseph Embry of the Department of Forensic Pathology performed an autopsy on the body the following morning. The body showed no obvious cause of death, but because it was found in a situation suggesting foul play, Dr. Embry rendered a diagnosis reached by exclusion: he opined that death was by asphyxia due to the tape gag which was tight around the victim's mouth.
The car that was rented with appellant's VISA card and driven by McCullars to the robbery-murder was returned to Budget Rent-A-Car. The appellant went to the rental office and paid the $1145.31 bill in cash. The odometer showed that it had been driven 352 miles.
When appellant was arrested, he had a .38 automatic pistol concealed at the small of his back. The pistol was identified by McCullars, who "turned state's evidence," as being the same pistol that appellant had provided him to use in the robbery-murder.
Miss Sherry Smith, another state's witness testified that she and appellant had a relationship for two years, ending when she was about 19. A month before the incident in this case, appellant told Miss Smith that he wanted her to go to Jasper and to Mr. Crump's house and knock on the door. He told the girl that Mr. Crump had thousands of dollars in his safe. A black *Page 3 
man went to Jasper with Miss Smith and McCullars on this occasion. They saw a strange vehicle near Crump's home, cancelled the plan, and returned to appellant's service station. She testified that she had seen appellant only twice since that evening. One of the times was at a hot dog restaurant in Birmingham, where he asked her if anyone had mentioned "that Jasper thing" to which she replied she heard that a 17-year-old girl had turned state's witness.
Two accomplices who testified were Steve "Red" McCullars and Lori Culpepper. Miss Culpepper testified that her job in the robbery was to keep watch from the living room window while McCullars and Doris Long dealt with Mr. Crump. She said that after some period of time, both Doris Long and Red McCullars came back into the living room and it was then that Doris said she thought that Crump was dead. She also testified that appellant was very angry when they reported to him that they did not get the money.
Sandra McCullars, the wife of Red McCullars, testified about several conversations over the telephone and in person with appellant Bates after her husband was arrested. She said she recognized appellant's voice and asked if he was going to help her husband. He told her that he had to help him because if McCullars was connected to the murder case, he would be also. He further told Mrs. McCullars to tell her husband to keep his mouth shut and just sit tight. Bates had asked Mrs. McCullars to come to his service station, which she did. He told her not to worry about the rental car, since the speedometer had been disconnected and it could not be proved that the car had been driven from Birmingham to Jasper and back. He said that Lori Culpepper and Doris Long were getting their stories mixed up. He told her that he had told McCullars that they should have put the girls in a sack and dumped them in the nearest creek. He also stated to her that he talked with his lawyer and that she and her husband needed to get an alibi for the 5th through the 10th of the month to indicate that they were elsewhere at the time of the crime. He stated that he had four witnesses he could get who would testify that they had been doing some work at his service station. Appellant eventually contributed $2500 for attorney's fees for McCullars.
Appellant contends that there was a lack of corroboration of the testimony of accomplices Steve "Red" McCullars and Lori Culpepper necessary to support appellant's conviction and to comply with § 12-21-222, Code of Alabama 1975. The test of whether corroboration exists was explained by this court inKimmons v. State, 343 So.2d 542 (Ala.Cr.App. 1977), as follows:
 "The process of analyzing the evidence to determine if there has been sufficient corroboration of an accomplice (or accomplices) is one of subtraction. That is, the trial court, on proper motion, as a matter of law is required to take away the evidence of the accomplice(s) and determine whether the rest of the testimony is sufficient to tend to connect the defendant with the commission of the offense."
The testimony of Sherry Smith and Sandra McCullars strongly connect appellant with the commission of the offense, and seems to us to amply establish the necessary corroboration.
Appellant contends that Miss Smith's testimony should not be considered because she too was an accomplice. The evidence tends to show that she drove by the scene of the robbery-murder approximately one month before the commission of the crime at the instruction of appellant. The test to determine whether a witness is an accomplice is this: Could the witness have been indicted and convicted of the offense in question, either as a principal or as an accessory? White v. State, 352 So.2d 29
(Ala.Cr.App. 1977). We consider that Miss Smith was not an accomplice within this meaning and for the purposes of §12-21-222.
Appellant also contends that the testimony of Mrs. McCullars should not be considered as corroborative because he *Page 4 
urges, as wife of an accomplice, she is, by definition, also an accomplice. The rule is adverse to appellant. C. Gamble,McElroy's Alabama Evidence § 300.01 (7) (3d ed. 1977).
The court of appeals held in Crumbly v. State, 26 Ala. App. 24,152 So. 55 (1933), cert. denied, 228 Ala. 45, 152 So. 57
(1934), that the defendant's request of an accomplice's father to tell his incarcerated son "to keep quiet, that we will get him out," was "of itself some evidence tending to prove the consciousness of guilt, and tended to connect the defendant with the commission of the crime." See also, Hargett v. State,18 Ala. App. 616, 93 So. 207 (1922). Mrs. McCullars's testimony that the appellant instructed her to invent an alibi for herself and her husband and that appellant told her that he had witnesses who would say they were working at the service station tends to prove appellant had guilty knowledge of the crime. See Cline v. State, 25 Ala. App. 433, 148 So. 172 (1933).
Mrs. McCullars's testimony about what the appellant told her constituted corroboration as did the contribution of the $2500 to McCullars's defense. Appellant's comments to Mrs. McCullars manifested appellant's continued interest in concealing his participation in the crime and his consciousness of guilt. Sufficient corroboration of accomplices' testimony may be furnished by tacit admission by the accused, by the suspicious conduct of the accused, and by the association of the accused with the accomplice. See Jacks v. State, 364 So.2d 397
(Ala.Cr.App.), cert. denied, 364 So.2d 406 (Ala. 1978); Mathisv. State, 414 So.2d 151 (Ala.Cr.App. 1982).
In the leading case of Andrews v. State, 370 So.2d 320
(Ala.Cr.App.), cert. denied, 370 So.2d 323 (Ala. 1979), this court, speaking through Judge Bowen, stated as follows:
 "The corroboration of an accomplice must tend to connect the accused with the commission of the crime but need not refer to any statement or fact testified to by the accomplice. `Corroborate means to strengthen, to make stronger; to strengthen, not the proof of any particular fact to which the witness has testified, but to strengthen the probative, criminating force of his testimony.' Malachi v. State, 89 Ala. 134, 140-141, 8 So. 104, 106 (1889); Smith v. State, 230 Ala. 413, 416, 161 So. 538
(1935); Brown v. State, 31 Ala. App. 529, 19 So.2d 88
(1944). The corroborative evidence need not be strong, nor sufficient of itself to support a conviction, the criterion being that it legitimately tend to connect the accused with the offense. Miller v. State, 290 Ala. 248, 275 So.2d 675 (1973). Corroborative evidence need not directly confirm any particular fact nor go to every material fact stated by the accomplice. Bridges v. State, 52 Ala. App. 546, 295 So.2d 266 (1974); Dykes v. State, 30 Ala. App. 129, 1 So.2d 754 (1941). Corroborative evidence need not directly connect the accused with the offense but need only tend to do so. State v. Canada, 107 Ariz. 66, 481 P.2d 859, cert. denied, 404 U.S. 848, 92 S.Ct. 154, 30 L.Ed.2d 87 (1971). See Pearce v. State, 26 Ala. App. 492, 495, 164 So. 114, cert. denied, 231 Ala. 150, 164 So. 118 (1935) (`[B]ut, as we read the cases, the corroboratory evidence, if it meets the test of "tending to connect the defendant with the commission of the offense", need not be, in and of itself alone, that tending in any wise to fasten guilt upon the defendant'); 23 C.J.S. Criminal Law § 812 (3) (1961). The sufficiency of corroborating evidence is established if its probative value tends to connect the defendant with the commission of the crime. Lowe v. State, 32 Ala. App. [176], 178, 22 So.2d 618 (1945)."
We conclude that the appellant's conviction is due to be affirmed.
AFFIRMED.
All the Judges concur. *Page 5