Appellant, 17-year-old Cameron Leonard, was tried as a youthful offender for a violation of the Youthful Offender Act. The underlying offense was conspiracy to commit robbery in the first degree. She was found guilty and sentenced to 3 years in the custody of the Alabama Department of Corrections. Her motion for new trial having been denied, she brings this appeal.
Cameron Leonard, the state's evidence tended to indicate, conspired with two boys, Bobby Hubbard and Eddie Shropshire, to rob her father, Judge Kyser Leonard, at his home.
 I
The appellant first contends that there was insufficient corroboration independent of a statement of a co-conspirator to convict her under the evidentiary rule of § 12-21-222, Code of Alabama 1975, which states that:
 "A conviction of a felony cannot be had on the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the offense, and such corroborative evidence, if it merely shows the commission of the offense or the circumstances thereof, is not sufficient."
The means for analyzing the evidence to determine if there is sufficient evidence to corroborate testimony of an accomplice is to set aside the accomplice's testimony and determine whether or not the remaining evidence tends to connect the defendant with the commission of the offense. Peoples v. State,418 So.2d 935 (Ala.Cr.App. 1982); Bates v. State, 461 So.2d 1
(Ala.Cr.App. 1983).
In this case, Mrs. Mazie Jenkins, Bobby Hubbard's grandmother, testified that the appellant telephoned to her house at approximately 6:00 a.m. the Tuesday before Thanksgiving, which was the morning of the robbery. She said that Miss Leonard came to her house about 6:30 that morning. She said that appellant and Bobby Hubbard called Eddie Shropshire from her house and that Shropshire came there. Then the three of them left together. The robbery occurred about 8:00 a.m. that morning, as Judge Kyser Leonard had returned to and was entering his residence. After the robbery, Mrs. Carolyn Hill observed 74-year-old Judge Kyser Leonard staggering down his driveway, his face and head covered with blood, waving his arms. She stopped, attempted to help him and then called the police department.
The police officers went to the Talladega Academy, a private school, to tell Miss Leonard what had happened to her father and also to get her to check the house to see what was missing. They wanted to find out from her if she knew anything that would shed any light on what had happened. After they talked with her, she was taken back to her school and then she proceeded to the hospital where her father was in the intensive care unit as a result of his injuries sustained in the robbery. The officers testified that Miss Leonard, the appellant, was at no time in custody nor was she a suspect in the case. She told the police officers the following:
 "I got home from school about 3:00. Daddy was there. I left, went shopping for a little while, and went back home. Daddy had left while I was gone. About 4:30 or 5:00 Bobby and Eddie came over. *Page 972 
We sat around the house for a while and left. I guess around 5:30. We went to Wal-Mart, left there and went riding around and went to Debra's. Didn't stay long there. We left Debra's and took Eddie and Bobby home. Then I went home. There was no one at the house when I got there or when I left this morning. I left this morning about 7:00, went to Hardee's and got a coke, and then went on to school. I don't know who brought them there, maybe Debra."
The appellant signed this statement.
This evidence shows the appellant was at the scene of the robbery, her home. She slept there the preceding night; she was with the robbers on the same day as the robbery and within an hour and a half of the occurrence. Appellant's statement shows her to have been in their company the night before. It shows her to have attempted to conceal being with the robbers on the morning of the robbery and being at the home of one of them, calling the other one of them and having him join them, and leaving in a car with them. The statement also includes a sentence that was made apropos of nothing: "I don't know who brought them there, maybe Debra."
There were numerous items of evidence independent of the statements of the co-conspirators tending to connect the appellant with the commission of the crime.
 II
Appellant next contends that the statement of witness Mazie Jenkins that her grandson told her Cameron Leonard was the person who called him at 6:00 a.m. on the morning of the robbery, was inadmissible hearsay. However, as this court has stated, "any act or statement by an accused's co-conspirator in the commission of the crime, done or made before the commission of the crime, during the existence of the conspiracy, and in furtherance of a plan or design, is admissible against the accused." Nance v. State, 424 So.2d 1358 (Ala.Cr.App. 1982),cert. denied [Ms. 82-126] (Ala. 1983).
The court, sitting without a jury, admitted this evidence, stating: "I'm going to let the testimony in subject to a proper tie-up during this proceeding." A "proper tie-up" was indeed made later in the trial. No error was committed by this procedure.
 III
Appellant next asserts that the statement given by her while she was in police custody occurred during a custodial interrogation and was made in violation of her constitutional rights as enunciated in Miranda v. Arizona, 384 U.S. 436,86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
We do not see that the focus of the investigation had centered on the appellant at this time; this is a key factor in determining whether the Miranda rules must be applied. SeeKelley v. State, 366 So.2d 1145 (Ala.Cr.App. 1979), Harris v.State, 376 So.2d 773 (Ala.Cr.App.), cert. denied, 376 So.2d 778
(Ala. 1979).
The law enforcement authorities had no responsibility at this stage in the investigation to advise appellant of her constitutional rights.
This case is due to be affirmed.
AFFIRMED.
All the Judges concur.