304 So.2d 625

**Abron AARON, Jr.**

**v.**

**STATE.**

**6 Div. 654.**

Court of Criminal Appeals of Alabama.

Nov. 26, 1974.

Rehearing Denied Dec. 17, 1974.

**72**

Ralph C. Burroughs, Public Defender, and Joel L. Sogol, Asst. Public Defender, Tuscaloosa, for appellant.

William J. Baxley, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State.

HARRIS, Judge.

Appellant was convicted of robbery, and the jury fixed his punishment at ten years in the penitentiary. Prior to arraignment, he was found to be indigent and the Public Defender of Tuscaloosa County was appointed to represent him. He pleaded not guilty. After his conviction he gave notice of appeal, and his bond was set at $10,000.-00. He is in this court with a free transcript, and trial counsel filed a brief on appeal.

The victim of this robbery, Oscar Miller, was a fifty-nine year old night watchman and fireman for Pearson Lumber Company in Tuscaloosa. He had worked in this capacity for twenty years. His hours of employment was from twelve o'clock midnight until six o'clock A.M. On the night of the robbery, he drove his automobile to the lumber yard and parked at the front door of the boiler room. He arrived shortly before midnight to relieve another night watchman whose shift ended at that hour. The date was May 19, 1973. He carried a thermos bottle of coffee to drink during the night. He had his billfold in his left hip pocket, containing $14.00, social security number and other identification. He owned a foreign coin of some kind that he kept in the glove compartment of his car. His duties required him to keep the fire burning in the boiler for the dry kiln and to make rounds in the lumber yard every hour and to punch clocks stationed at various points with a key. Just before 1:00 A.M., he drank some coffee as he had to make his rounds at 1:00. He was hit on the head with a blunt instrument and rendered unconscious. He regained consciousness three days later in the Druid City

Hospital, where he remained as an in-patient for ten days and was followed as an out-patient in the office of a neurosurgeon for a period of time. He did not see his assailant and had no recollection as to what happened to him after he was struck down, nor how he got to the hospital. Sometime after regaining consciousness, he realized his billfold was missing.

Sometime later, a city detective brought him a billfold and a foreign coin, and he identified both items as his property. These items were introduced in evidence over objections of the appellant.

The neurosurgeon testified that Mr. Oscar Miller was brought to the emergency room at Druid City Hospital on Sunday, May 20, 1973, in an unconscious state. He had a two inch laceration of the frontal region of the head. X-rays were made which revealed a fracture of the left frontal bone of the skull. Mr. Miller remained unconscious for three days and was confined in the hospital from May 20, to May 31, and after his discharge, he saw him in his office for a period of time.

At 6:00 A.M. on May 20, 1973, Elmer Cole, who was employed by Pearson Lumber Company as a fireman, reported for work to relieve Mr. Miller. He saw Mr. Miller coming from the boiler room staggering like a drunk man; that he was trying to get around but did not know where he was. Mr. Cole took him by the arm and shook him and called his name, but, in his words, "I couldn't get no sense in him", and he would not say anything. He was in a daze and could not utter a word. He was completely disoriented as to time and place. Mr. Cole noticed a gash on the back left side of Mr. Miller's head, and he left the lumber yard and contacted one of his bosses. Another employee carried Mr. Miller to the hospital. Mr. Cole further testified that he picked up the thermos bottle and it was practically full. He poured some in a cup, and it was still hot. He did not smell the odor of alcoholic beverages on Mr. Miller or around the premises.

Another employee of the lumber company testified that he lived in quarters adjoining the lumber yard, and that he knew the appellant; that appellant came to his house around 11:30 P.M. the night before Mr. Miller was struck and robbed and stayed about twenty minutes. He did not see appellant any more.

Jackson Witherspoon, who was also employed at Pearson Lumber Company as a fireman, testified that his hours of employment were from 6:00 P.M. until midnight; that he saw Mr. Miller at 11:30 P.M. on May 20, 1973; that Mr. Miller came to relieve him. He talked to Mr. Miller a few minutes while he was drinking coffee and saw him put the cup back on the thermos bottle. This witness left the lumber yard at twelve o'clock, and when he last saw Mr. Miller he was not injured and appeared to be normal in every respect. Witherspoon further testified that he knew appellant and saw him walking on a driveway through the lumber yard just before Mr. Miller came to work. There were two other men with the appellant, but he did not know them. The lumber yard was well lighted and the appellant and his two companions walked by the boiler room within fifty feet of Witherspoon. They were walking in the direction of the living quarters of a number of the lumber company's employees. This witness further testified that it started raining real hard after he got home from work that night, and he thought it rained most of the night or morning.

Willie Belle Aaron, a first cousin of appellant, testified that appellant came to her home on Sunday morning, May 21, 1973, and told her he had hit a man. This witness testified at the preliminary hearing and said the same thing. At trial, she tried to "play down" her testimony saying she started drinking beer and gin on Saturday night and was still drinking Sunday morning, and that if she remembered *correctly*, appellant told her he had hit a man, but she couldn't swear to it.

Martha Aaron, the mother of appellant, was called as a witness for the state. She testified that on Sunday she was on her way to her daughter's house and saw appellant coming across the street; that he told her he had hit a man and was sorry he had done it. He didn't tell her what he had hit the man with. She also testified that when her son made that statement to her he was drunk. She did not say her son was drunk at the preliminary hearing.

This witness testified differently at the preliminary hearing, and the prosecutor informed the court that he had been taken by surprise and requested the court to declare the witness hostile and permit her to be cross-examined. The request was granted.

On cross-examination, her testimony at the preliminary hearing was referred to where she was asked the question: "What did he say?", and her answer was, "He said he hit Mr. Miller, but he was sorry he done it." She was then asked if that was the statement her son made and she replied, "That is what he said, yeah, that is true."

These last two witnesses were interviewed by the city detective in charge of the investigation. He interviewed the mother at 2:00 P.M. on May 21, 1973, at her home, 1911 Fifteenth Avenue, Tuscaloosa, Alabama. The proper predicate was laid for an impeaching question, and the officer testified that appellant's mother told him:

"That Abron Aaron, Jr. told her on Sunday, May 20, 1973, that he was going to tell her something, because he knew she would not tell it. She stated he told her that he hit Oscar Miller, the night watchman at Pearson Lumber Company, on the head with a brick and took his billfold; she stated he said he felt bad about it and was sorry, but needed the money to go to West Virginia; she stated that Abron Aaron had over one-hundred dollars Sunday."

The state brought out from Martha Aaron that Willie Belle Aaron had a brother living in West Virginia.

On the strength of the detective's interview with Willie Belle and Martha Aaron, he picked up appellant on Monday, May 21, 1973, at 7:30 P.M. for investigation. At the booking station, he was told by the desk sergeant to put his personal belongings on the desk. Appellant removed two billfolds from his pockets and some coins. One particular coin was a foreign coin. The detective looked in one of the billfolds and found Mr. Miller's driver's license, social security card and other papers showing the billfold belonged to Mr. Miller. He took charge of this billfold and its contents, along with the foreign coin. He kept them in his possession until the day of the trial when he delivered them to the court reporter, and after they were identified by Mr. Miller, they were introduced in evidence as aforesaid. The billfold was dry at the time the officer took it in his custody but he testified that it had been wet.

Appellant did not testify nor did he offer any evidence in his behalf.

Title 15, § 154, Code of Alabama 1940, provides, in pertinent part:

"An officer may (also) arrest any person, without warrant, on any day and at any time . . . when a felony has been committed, though not in his presence, by the person arrested, or when a felony has been committed, and he has reasonable cause to believe that the person arrested committed it  *  *  *."

■ The arrest of a defendant without a warrant is lawful where the arresting officer unquestionably had reasonable cause to believe that the person arrested had committed a felony. Boulden v. State, 278 Ala. 437, 179 So.2d 20; Fennell v. State, 51 Ala.App. 23, 282 So.2d 373.

■ The trial court properly admitted in evidence the billfold and the foreign coin found on the defendant at the time of his

arrest, and which contained the identification of the robbery victim and other papers. Boulden v. State, supra.

 This is a circumstantial evidence case, but it is a strong one. We have held many times that circumstantial evidence is entitled to the same weight that direct evidence is entitled to provided that it points one way, viz., to the guilt of the accused. Where, as here, the prosecution relies on circumstantial evidence for a conviction, very wide latitude is allowed in making proof. Willis v. State, 37 Ala.App. 185, 66 So.2d 753; Sumeral v. State, 39 Ala.App. 638, 106 So.2d 270; Cline v. State, 25 Ala. App. 433, 148 So. 172; Hollenquest v. State, 301 So.2d 264 (Court of Criminal Appeals, Ms., 1974).

The circumstances in this case tending to connect the appellant with this robbery were, (1) he was seen on the premises of the lumber yard shortly before the crime was committed, (2) he told his mother that he hit the victim on the head with a brick and took his billfold and that while he was sorry, he needed the money to make a trip to West Virginia, (3) he was found in possession of the victim's billfold at the time he was arrested, and (4) he had on his person a foreign coin that the victim had placed in the glove compartment of his car which was parked at the door to the boiler room, where the victim's duties required him to be.

Where there is a reasonable inference to prove the existence of the corpus delicti, the court should submit to the jury for its consideration the question of the sufficiency and the weight of the evidence tending to support that inference. Hine v. State, 260 Ala. 668, 72 So.2d 296; Haggler v. State, 49 Ala.App. 259, 270 So.2d 690; Felton v. State, 47 Ala.App. 182, 252 So.2d 108; Hollenquest v. State, supra.

There was no error in overruling and denying appellant's motion to exclude the state's evidence. There can be no question as to the proof of the corpus delicti and the evidence adduced by the state was more than ample to prove the guilt of the accused beyond a reasonable doubt and to a moral certainty.

There is no error in the record injuriously affecting the substantial rights of appellant, and the judgment of the court below is due to be affirmed.

Affirmed.

All the Judges concur.