Appellant was convicted of murder in the first degree and the jury fixed his punishment at life imprisonment in the penitentiary. He was represented by court-appointed counsel and at arraignment he entered a plea of not guilty. After sentence was imposed he gave notice of appeal and was furnished a free transcript. Trial counsel was appointed to represent him on appeal.
On the night of October 31, 1974, Mr. Glenn Harrison, the owner and operator of the Elmont Grocery Store and Service Station located on the Old Wetumpka Highway in the Madison Park area of Montgomery County, was shot with a .410 gauge shotgun. The time was around 8:45 p.m. The only persons present at the time of the shooting were the deceased and his wife. They were in the process of closing the business for the night when the shooting occurred. The deceased was at the gas pumps locking them when he was shot. Mrs. Harrison was inside the store closing and bolting the windows when she heard voices outside followed by gunshots. She rushed outside and saw her husband staggering toward the front door to the store. She saw the barrel of a shotgun in the hands of a black man who had his back toward her. She screamed and the man with the shotgun ran around the store and she did not see him again. Mrs. Harrison never got to see the gunman's face and could not identify her husband's killer.
The Montgomery Police Department was called and several uniformed officers and detectives came to the scene of the shooting. The uniformed officers were the first to arrive and they secured the scene. Detective R.E. Fisher arrived next and found Mrs. Harrison propping up Mr. Harrison who was bleeding from his chest and stomach area. An ambulance was called and the victim was carried to a local hospital. Officer Fisher was allowed to talk to Mr. Harrison just before he died in an attempt to get a description of the gunman. Mr. Harrison told the officer that he was dying and that his insides were all shot up. As he was dying he told the officer that he was shot *Page 969 
by a black male, approximately six feet tall, who was wearing a three quarter length coat and had on a stocking covering his face.
Detectives Cody Wood and John Lloyd arrived at the scene of the shooting and they found a spent .410 gauge shotgun shell near the gas pumps. Wood testified that he smelled the spent shell and from the fresh odor he determined that the shell was recently fired. Another .410 spent shell was found but it was mutilated and appeared to have been run over previous to the night of the shooting. Wood also found two stockings on a dirt pile near the store and these had eye holes in them. These items were placed in a paper bag and sealed and Wood wrote his initials — CRW — across the seal. All of these items were personally delivered by Wood to Dr. Richard A. Roper, Assistant State Toxicologist, at the hospital the night of the killing.
Dr. Roper performed an autopsy on the body of the deceased to determine the cause of death. After stating his education, experience and qualifications Dr. Roper testified that death resulted from hemorrhage and shock associated with a single shotgun wound to the lower right chest. He further testified that he removed five gunshot pellets from the body of Mr. Harrison and turned them over to Mr. Charles Wesley Smith of the State Department of Toxicology.
Following the death of Mr. Harrison an intensive investigation was begun to apprehend the killer. The police took into custody a number of .410 shotguns from the residents of the Madison Park area and turned them over to Mr. Smith for examination and comparison with the spent .410 shell found near the gas pumps where the shooting occurred.
In the course of their investigation the officers learned that appellant had borrowed a .410 shotgun from Jesse Boswell between 7:30 and 8 o'clock on the night of the murder. Jesse Boswell and his wife, Eva Boswell, operated a sweets shop in the Madison Park area and about two miles from where Mr. Harrison was shot. Eva Boswell was present when appellant came to their place to borrow the shotgun and told them that he was going to shoot rabbits on the highway that night and if he killed any, he would bring them one. Jesse Boswell loaded the shotgun and gave it to appellant who then got in his car and left. According to Eva Boswell's testimony appellant returned to their shop later that night to play cards and told them that he had been stopped by a State Trooper who was on his way to the scene of the shooting and the Trooper told him that Mr. Harrison had been shot. Appellant further stated that he didn't get a chance to shoot any rabbits that night because he did not think it wise to be out shooting rabbits with so many police around.
Eva Boswell further testified that the .410 shotgun was loaded by her husband when he loaned it to appellant and that appellant returned the gun the morning after Mr. Harrison was shot and the gun was empty. A day or two later appellant came back to see the Boswells and told them they had to get rid of the gun or give it to him and he would get them another one. He explained that the night Mr. Harrison was killed, "he loaned his car to a fellow and this fellow had gone down and shot the man." Appellant didn't say whom he loaned his car to that night and who had shot Mr. Harrison. The Boswells told appellant they would not let him have the gun saying, "We would handle it from here."
Officer T.J. McLain came to the Boswell place and asked them about a .410 gauge shotgun and he gave them a receipt for the gun and took it to Mr. Charles Wesley Smith of the State Toxicology Department.
Mr. Charles Wesley Smith of the Alabama Department of Toxicology testified that he conducted a firearms comparison test on about six .410 gauge shotguns that had been collected by the police officers from the residents of the Madison Park area including the shotgun the Boswells surrendered to Officer McLean. After conducting the firearms comparison tests Mr. Smith concluded that the spent shotgun shell casing found at the scene of the shooting *Page 970 
had been fired from the shotgun which appellant borrowed from the Boswells shortly before Mr. Harrison was shot on the night of October 31, 1974.
The State's evidence focused directly on appellant and he was arrested by Detective Cecil H. Humphrey and carried to the station house where he was given the Miranda rights and warnings. He signed a waiver of rights form and freely talked to the officer but told him he was not going to sign a statement. A voir dire hearing was held out of the presence and hearing of the jury. He told the officer that his brother-in-law, Alfonso Hogan, and some other men picked him up in his car at Federal Drive and Coliseum Boulevard after he got off work and they went to Hogan's home on West Fairview Avenue where they drank a fifth of gin after which he carried the men to their respective homes. At this point appellant changed his story and told the officer that he went to the Boswells and borrowed the .410 gauge shotgun which Jesse Boswell loaded for him. That he told the Boswells that when he went to pick up his girl friend at 11 o'clock that night he would be able to kill rabbits on the highway. He told the officer that after getting the gun he went home and left the men in the car while he ate supper. That after supper he carried the men home and while on his way back to his home he was stopped by a State Trooper who told him that Mr. Harrison had been shot. He then stated that he went to the house across the highway from the grocery store where the shooting took place and saw several policemen there. He then took the shotgun to his trailer and went to the Boswells and told them about Mr. Harrison. Appellant told the officer that he borrowed the gun to rabbit hunt but he did not tell the officer that he loaned the gun or the car to anyone. Appellant first said he had taken the gun back to the Boswells that night but changed his story again and said he took it to his trailer. At the conclusion of the voir dire hearing the Court ruled that appellant's statement was knowingly and voluntarily made. The State laid the proper predicate, and the officer was permitted to relate to the jury what appellant had told him.
On cross-examination Officer Humphrey stated that he knew Alfonso Hogan and that he questioned Hogan one night, after he was given the Miranda rights and also that a Polygraph test was run on him. On redirect he testified the officers had investigated Hogan several times and his story checked out to be true and no warrant was ever signed for him.
After the State rested, appellant moved to exclude the State's evidence on the ground the State had failed to make out a prima facie case against him. This motion was overruled and denied.
Appellant testified in his behalf and denied that he had anything to do with killing Mr. Harrison. Appellant did admit that he borrowed the shotgun from Jesse Boswell to shoot rabbits but he didn't shoot at any rabbits. He claimed that he loaned his car to Hogan to get gas and the gun was in the car. He further testified that when Hogan returned his car, he admitted shooting Mr. Harrison twice.
On cross-examination he claimed the police put a gun in his face and forced him to sign the waiver form under a threat of death. He further stated that he returned the gun to the Boswells the same night he borrowed it. This was in direct conflict with the testimony of Eva Boswell.
Appellant admitted that he had previously been convicted of grand larceny in Elmore County. He further testified that he told the police officers that Hogan had admitted to him that he shot Mr. Harrison two times. This statement was also in direct conflict with the testimony of the officers.
Appellant called Alfonso Hogan as a witness but he denied killing Mr. Harrison, denied telling appellant that he did, and denied borrowing appellant's car. He confirmed the testimony of the officers that he had been questioned on several occasions but that his story checked out to be true and he was released. *Page 971 
The State was compelled to rely on circumstantial evidence in this case. Circumstantial evidence may afford satisfactory proof of the corpus delicti in a murder prosecution, and, if facts are presented from which the jury may reasonably infer the crime has been committed, the question must be submitted to the jury, and other evidence, tending to implicate the defendant is thereby rendered admissible. Johnson v. State,247 Ala. 271, 24 So.2d 17; Phillips v. State, 248 Ala. 510,28 So.2d 542; DeSilvey v. State, 245 Ala. 163, 16 So.2d 183;Harnage v. State, 49 Ala. App. 563, 274 So.2d 333; Cronnon v.State, 56 Ala. App. 192, 320 So.2d 697.
Where there is legal evidence from which the jury can by fair inference find the defendant guilty, this Court has no right to disturb the verdict of the jury. Whether there is such evidence is a question of law, its weight and probative value are for the jury. Haggler v. State, 49 Ala. App. 259, 270 So.2d 690.
Where the evidence presented raises questions of fact for the jury, and such evidence, if believed, is sufficient to sustain conviction, the denial of a motion to exclude the State's evidence, the refusal to give the affirmative charge and the denial of a motion for new trial, do not constitute error.Young v. State, 283 Ala. 676, 220 So.2d 843.
Counsel for the State and the defendant are allowed a rather wide latitude in drawing their deductions from the evidence.Cronnon v. State, supra.
Very wide latitude is allowed where the prosecution relies on circumstantial evidence for a conviction. Aaron v. State,54 Ala. App. 71, 304 So.2d 625.
The circumstances in this case tending to connect appellant with the crime charged against him were: (1) Shortly before the killing he was in possession of the gun that was used in the killing. (2) The spent shotgun shell found at the murder scene was fired from the identical gun borrowed by appellant. (3) The gun was fully loaded when appellant borrowed it to shoot rabbits. (4) Admittedly he did not shoot at any rabbit, yet the gun was empty when he returned it to the owner. (5) He claimed he returned the gun the night he borrowed it but the proof showed he hid the gun in his trailer the night of the homicide and returned it the morning after the killing. (6) He tried to get the owner of the gun to get rid of it or give it to him and he would replace it with another gun. (7) He told the officers that he loaned his car in which the gun was located to another man who told him that he shot the deceased. This statement was proven to be false. The jury had all of these facts and circumstances from which to draw reasonable inferences that appellant was implicated in the shooting of the deceased.
Appellant bitterly complains that the prosecutor was guilty of misconduct during the trial of this case in making derogatory remarks and casting aspersions upon defense counsel. We do not condone the vituperative remarks made by the prosecutor. On the contrary, we condemn such remarks and the conduct of the prosecutor as being unworthy of his role as a prosecuting attorney. However, from our review of the entire record, we cannot say that these remarks, though improper, were so prejudicial to appellant as to have warranted a mistrial.
Appellant's counsel objected to many of the remarks of the prosecutor and received a favorable ruling and in some instances there was no ruling on the objection. It is settled law in this state that in the absence of a ruling from the trial court to the admissibility of testimony no question is presented for review. McClendon v. State, 54 Ala. App. 327,307 So.2d 723; Conner v. State, 52 Ala. App. 82, 289 So.2d 650.
Matters not objected to in the trial court cannot be considered for the first time on appeal, since review on appeal applies only to rulings invoked at nisi prius. Wade v. State,49 Ala. App. 601, 274 So.2d 626.
It is equally well settled that a negative answer to an improper question does *Page 972 
not constitute reversible error. Stephens v. State, 250 Ala. 123,33 So.2d 245; Hurst v. State, 54 Ala. App. 254,307 So.2d 62; Haisten v. State, 50 Ala. App. 504, 280 So.2d 209.
We have carefully searched the record for errors which injuriously affected the substantial rights of appellant and have found none.
The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.