Terry Wade McDaniel was charged with intentionally causing the death of Michael McLaughlin, "by stabbing him with a knife," contrary to § 13A-6-2, Code of Alabama 1975.
The jury found the appellant "guilty of manslaughter as charged" and after a sentencing hearing at which two prior felonies were placed in evidence before the court, the appellant was sentenced to 16 years' imprisonment in the penitentiary.
Four issues arise from the stabbing of Michael McLaughlin by Terry McDaniel on the afternoon of February 4, 1982, after the two had been together drinking beer for a period of time that day. The evidence relating to the homicide will be discussed with the issues as hereinbelow set forth.
 I
Appellant contends that Fairfield Police Officer Charles Estes lacked probable cause to effect the arrest of the appellant, Terry Wade McDaniel.
The principal issue here is whether or not Officer Estes had the right to rely upon and did, in fact, rely upon information communicated to him by his superior, Sergeant Manuel R. King, prior to effecting the arrest of the appellant.
The Supreme Court of the United States in Whiteley v. Warden,Wyoming State Penitentiary, 401 U.S. 560, 91 S.Ct. 1031,28 L.Ed.2d 306 (1971), clearly indicates that where the arresting officer did not have probable cause for the arrest of the defendant, he may nevertheless rely upon information relayed to him by a superior officer, provided that, in fact, the superior officer upon whom he relies, had the necessary basis for the issuance of a legal warrant. In making this determination, a magistrate must look to the source of information in the superior officer and the reliability and credibility of such information. Jaben v. United States, 381 U.S. 214,85 S.Ct. 1365, 14 L.Ed.2d 345 (1965).
As heretofore noted by this court in Hadley v. State,391 So.2d 158 (Ala.Cr.App. 1980), cert. striken, 391 So.2d 162
(Ala. 1980), information supplied by citizen informants is accorded more reliability than that provided by criminal confidential informants who may expect some concessions or gain in exchange for such information.
In the case at bar, Sergeant King testified that he received a telephone call from Jean McDaniel during the afternoon of February 4, 1982, at approximately 2 o'clock. He related that she advised him of receiving a telephone call from the appellant, Terry McDaniel, that he was crying and stated to her that he "had cut somebody and didn't know whether they were dead or not", that he did not know where the victim was and that he (McDaniel) was at the Elk's Club in Fairfield. Sergeant King then related that he telephoned Officer Estes who was investigating an auto accident at Lloyd Noland Hospital where one Mike McLaughlin was involved and that Estes informed him that McLaughlin was dead. He related that he asked Estes to find out from the doctor as to the cause of death which he did and informed King that McLaughlin was a victim of a knife wound. Sergeant King stated that he then directed Estes to proceed to the Elk's Club in Fairfield and pick up Terry McDaniel and bring him to headquarters "so that we can find out more about it." Moreover, he stated that he received a pocket knife from Estes which was subsequently identified in court. This knife contained a reddish-looking substance on the blade which appeared to be human blood. Sergeant King stated that he knew there was a very bad relationship between Terry McDaniel and Mike McLaughlin and that he had once heard McDaniel, while he was spending time in jail, make a threat that he would kill Mike McLaughlin. There was some dispute at trial between Sergeant King's testimony and that which he had given at an earlier hearing. We believe that this was a matter which was properly submitted to the trial judge and his judgment in this matter must be given great weight on appeal. Lentini v. State,406 So.2d 998 (Ala.Cr.App. 1980), cert. denied, 406 So.2d 1003
(Ala. 1981). *Page 673 
We have carefully examined this record and the testimonies presented at trial and find that the trial court properly resolved this issue determining that Officer Estes made a proper arrest of the appellant and that there was in fact probable cause for the arrest of the appellant based on the information hereinabove set forth. Robinson v. State,361 So.2d 379 (Ala.Cr.App. 1978), cert. denied, 361 So.2d 383 (Ala. 1978); Aaron v. State, 54 Ala. App. 71, 304 So.2d 625
(Ala.Cr.App. 1974).
 II
The appellant next argues that the statement given by the appellant, Terry McDaniel, to the officers on the evening of February 4, 1982 at Fairfield Police Headquarters was involuntary and not the product of a rational intellect because he had not been properly advised of his constitutional rights and, moreover, that his request for counsel or right to counsel had not been honored by the officers involved.
Again, the evidence on this issue is conflicting. The appellant was a 24-year-old white male who appeared to be in good health. Soon after being brought to police headquarters he talked with Officer Mosely who testified that he read the appellant his Miranda rights and also advised him that he was charged with murder. (R. 41). Officer Mosely further testified that neither he nor any other officer threatened, intimidated, abused or used any coercive tactics to the appellant in order to obtain a statement from him.
There was absolutely no testimony presented that the appellant was suffering from any physical or mental disability. The appellant's contention primarily is that he was upset and that he had requested to see an attorney. The police officers point out, however, that appellant was allowed to make a telephone call and that his father and stepmother came to the Fairfield Jail soon after the telephone call was made and talked with appellant and they were advised that his father had talked with the Honorable Arthur Parker who had advised McDaniel not to make any statement. The father relayed this to his son, the appellant, in the officers' presence. This was on the evening of February 4, 1982, his father's visit having taken place somewhere between 8 and 8:30 that evening. The appellant at this point had twice been given his Miranda rights by the testimony given by the police officers. The officers stated that they knew his father and that the appellant did not ask to see his lawyer that evening.
It should be herein noted that the appellant testified himself on this issue. "I was so tore up I really don't remember what went on to tell you the truth the whole time I was there", (R 73), but acknowledged that he did talk with the officers on the evening in question and also talked with his parents while at the jail.[1]
The testimony presented through Officer Mosely indicated that the appellant's statement was given at approximately 9:35 p.m. on the evening of February 4, 1982, at the Fairfield Jail. The statement indicated that McDaniel and the deceased had been drinking beer together for some hours at several different places before getting into the argument. The appellant contended that the deceased drew a knife while they were in the parking lot near a Shoney's Drive In and that the appellant then pulled his knife and just "stabbed him in the chest area" and that the victim got back into his car and drove away. A steak knife was later retrieved from the automobile of the victim, but no pocket knife belonging to the victim was ever found, nor did the steak knife appear to contain blood, though blood was found in the victim's car on the door handle and seat.
Under the testimony presented in this record, we are of the opinion that the trial court properly determined that the appellant gave a knowing, voluntary and intelligent statement after being properly advised of his constitutional rights. The trial *Page 674 
judge properly determined this matter was voluntary. Hardy v.State, 409 So.2d 996 (Ala.Cr.App. 1982), Snider v. State,422 So.2d 807 (Ala.Cr.App. 1982).
 III
The appellant next asserts that the jury should have been charged on criminally negligent homicide because he claims that the deceased was killed in self defense. This charge was properly refused under the evidence presented in this cause.Daly v. State, 401 So.2d 274 (Ala.Cr.App. 1981); Rogers v.State, 417 So.2d 241 (Ala.Cr.App. 1982) and Quates v. State,439 So.2d 199 (Ala.Cr.App. 1983).
Moreover, the charge as herein tendered contained a misspelled word, "homocide". Thus, such charge would have been properly rejected on this basis also. Akers v. State,399 So.2d 929 (Ala.Cr.App. 1981).
The trial judge gave several of the appellant's written requested charges and refused several others. We have carefully examined each of these and determined that they were either covered by the oral charge of the court or other given written charges, inapplicable or abstract under the evidence presented at trial or incorrect statements of applicable law. Therefore, the remaining charges were properly refused at trial. Section12-16-13, Code of Alabama 1975.
 IV
Appellant contends that he was not properly sentenced in that the trial court considered felony convictions which occurred prior to the effective date of the current Alabama Criminal Code which has the effective date of January 1, 1980.
This court has upheld the constitutionality of the Alabama Habitual Felony Offender Act in an opinion written by Judge DeCarlo in Watson v. State, 392 So.2d 1274 (Ala.Cr.App. 1980), cert. denied, 392 So.2d 1280 (Ala. 1981). Moreover, this court has expressly rejected the argument that such act violates the United States Constitution's prohibition against cruel and unusual punishment because it retroactively imposes additional punishment for offenses previously committed. Serritt v. State,401 So.2d 248 (Ala.Cr.App. 1981), cert. denied, 401 So.2d 251
(Ala. 1981) and Smith v. State, 401 So.2d 251 (Ala.Cr.App. 1981), cert. denied, 401 So.2d 257 (Ala. 1981). The precise argument herein made was expressly rejected by this court inLidge v. State, 419 So.2d 610 (Ala.Cr.App. 1982), cert. denied,419 So.2d 616 (Ala. 1982). Thus, both of appellant's prior convictions for grand larceny and escape were properly considered by the trial court in imposing punishment herein.
As noted in Lidge, supra, and Julius v. State, 407 So.2d 141
(Ala.Cr.App. 1980), reversed on other grounds, 407 So.2d 152
(Ala. 1981), the trial court's are specifically authorized to consider the records of Jefferson County convictions which are set forth on trial docket sheets and have not been reduced to "minute entries." Ingram v. State, (1982) 437 So.2d 128
(Ala.Cr.App. 1982), cert. denied (Ala. September 2, 1983).
We have also considered appellant's argument that the judgment which shows the plea of guilty to the escape charge did not comply with the requirements of Amendment 37 of the Constitution of Alabama 1901. There is nothing on the face of State's Exhibit Two, which shows this conviction, to indicate that it does not comply with Amendment 37. Thus, the trial court did, in fact, properly consider both of appellant's prior convictions in setting sentence in this cause.
This court has carefully considered each argument made and find same to be without merit. The judgment below is due to be and is hereby affirmed.
AFFIRMED.
All the Judges concur.
[1] The officers' testimony indicates that the appellant initiated the conversation because he "wanted to get the matter off his chest." *Page 675