William Joseph Carr was indicted for intentionally causing the death of Robert *Page 1170 
Mosley in violation of Section 13A-6-2, Code of Alabama 1975. The jury found the appellant "guilty of murder as charged in the indictment." A sentencing hearing was held and the appellant was sentenced to life imprisonment without parole pursuant to the Alabama Habitual Felony Offender Act.
On the evening of October 10, 1987, Mr. Square Corbett returned to his home on 601 Grove Street, Birmingham, Alabama, to find Robert Mosley waiting on his porch. Mr. Mosley had been dating Mr. Corbett's daughter, Brenda, for a couple of years.
Corbett and Mosley went into the house. Mosley asked Corbett to take him to a party that Brenda was attending. Corbett refused.
Later that evening, the appellant and Brenda arrived at Mr. Corbett's home. When they entered the house, an argument ensued between the appellant and Mosley. Corbett asked the two of them to go outside and not to fight in his house. They complied.
At this point, the phone rang and Corbett went to answer it. His grandson's girl friend was calling to ask him to come and pick her up. Corbett walked outside and down to his car. He told Brenda where he was going and she indicated that she wanted to ride with him. Brenda was on the far side (i.e. passenger side) of the car.
The appellant and Mosley were also on the passenger side of the car. As he was about to enter the car, Corbett heard a "lick" (R. 65) "like somebody hit somebody with something." (R. 65) The victim, Mosley, came around to Corbett's side of the car.
According to Corbett, the victim was bleeding from the side of his neck. Corbett realized Mosley was wounded and tried to get him into the car. The victim leaned back on the car and then staggered back into the yard where he fell down fatally wounded and died. The appellant then walked in the direction of the house across the street which, belonged to Ida Mae Hamilton.
Investigator James Howell testified that he arrived on the scene at approximately 4:30 a.m. He took several pictures of the victim and the scene. Corbett identified the victim in the photo to be Robert Mosley. He also collected evidence which included a small bone-handled pocket knife.
Sergeant J.O. Duke testified that he was also called to the scene. He testified that he saw the small pocket knife and pointed it out to Investigator Howell. Later he went across the street to the home of Ida Mae Hamilton. He found fresh blood on the exterior door and along the interior wall of the house. He also found blood on the door leading to Ms. Hamilton's bedroom.
Kaland Hamilton said that on the night of the incident he was staying at his grandmother's house (i.e., Ida Mae Hamilton's). He was awakened when he heard the appellant knocking on the door. Kaland let the appellant in. He noticed some bloodstains on the appellant's arm. The appellant came to retrieve his jacket. He went down the hall to Ms. Hamilton's bedroom and her boyfriend gave the appellant the jacket. He then left.
Kaland said the next day he was playing behind the house and he found a butcher knife in an old mattress. He did not recognize the knife. He gave the knife to his "Auntie" who gave it to the police.
Square Corbett testified that, when the appellant and Brenda came into the house that night, an argument broke out. He asked the appellant and Mosley to go outside. He testified that at this point no blows had been exchanged. He could see a knife sticking out of the appellant's pants or pocket. He did not see Mosley with a knife.
On cross-examination, Corbett testified that the butcher knife he saw on the appellant belonged to him. He normally kept it in the kitchen and did not know how the appellant obtained it.
Larry Huys, a serologist with the Department of Forensic Sciences, testified for the State. He ran tests for the presence of blood on both knives. Both knives did have bloodstains on them. He was unable to *Page 1171 
determine the type of blood on the pocket knife (i.e., exhibit 8B). The blood on the butcher knife (i.e., exhibit 8A) was determined to be human blood. It was Type A blood. He also found Type A blood on the collar of the appellant's jacket. He stated that the decedent had Type A blood. Huys said approximately only one in four of the black male population has this type blood.
Dr. Joseph Embry performed the autopsy on the decedent. He testified that the cause of death was a stab wound 3 inches to the left of the neck. The wound was approximately 6 1/2 inches deep and severed the main artery which leads from the aorta to the arm. He said the wound was consistent with an overhead type swing. The length of the butcher knife was approximately 6 1/8 inches. Dr. Embry also testified that the victim had a blood alcohol level of .27 percent.
The appellant did not deny stabbing the victim, but claimed he did so in self-defense. He said he had gone with Brenda and Ida Mae Hamilton and her boyfriend to a party. Afterwards, they returned to Ms. Hamilton's home and he walked Brenda home.
When they entered the home, he stated that Mosley began to yell at Brenda. When he acted as if he were going to hit Brenda, the appellant stepped in front of her to protect her. Mosley then began to yell at the appellant. He stated that he tried to tell Mosley that he was not going out with Brenda.
They then went outside. When they were outside, the appellant stated that Mosley swung at him with a pocket knife. The appellant said he blocked this swing and was cut in the process. He stated that Mosley backed him up against the porch. He reached to get a flower pot, in order to protect himself from Mosley, and found the butcher knife. He swung the knife and stabbed the victim in self-defense.
 (I)
The appellant alleges that the trial court committed reversible error when it denied his motion for judgment of acquittal made at the close of the State's case and at the close of all the evidence. He argues that the State failed to prove a prima facie case. We disagree.
 "In the prosecution of an accused for the offense of murder, the State must prove the corpus delicti which includes: (1) the death of the victim named in the indictment, and (2) that death was caused by the criminal agency of another. See Johnson v. State, 378 So.2d 1164 (Ala.Crim.App.), cert. quashed, 378 So.2d 1173 (Ala. 1979) The State must further show that the defendant caused the death of the victim and the intent to cause such death. Section 13A-6-2, Code of Alabama 1975. Intent may be inferred from the use of a deadly weapon. Fears v. State, 451 So.2d 385
(Ala.Crim.App. 1984); Young v. State, 428 So.2d 155
(Ala.Crim.App. 1982); Swann v. State, 412 So.2d 1253
(Ala.Crim.App. 1982). Further, circumstantial evidence alone may be sufficient in conjunction with other facts and circumstances which tend to connect the accused with the commission of the crime to sustain a conviction. Dolvin v. State, 391 So.2d 133 (Ala. 1980) and cases cited therein; Cumbo v. State, 368 So.2d 871 (Ala.Crim.App. 1979), cert. denied, 368 So.2d 877 (Ala. 1979)."
Scanland v. State, 473 So.2d 1182, 1185 (Ala.Crim.App.),cert. denied, 474 U.S. 1035, 106 S.Ct. 602, 88 L.Ed.2d 581
(1985).
Thus, from our review of the evidence, presented at trial, viewed in the light most favorable to the prosecution, we find "that there was sufficient evidence. . . . from which the jury might have excluded every reasonable hypothesis except that of guilty beyond a reasonable doubt." Cumbo v. State,368 So.2d 871, 875-76 (Ala.Crim.App. 1978), cert. denied, 368 So.2d 877
(Ala. 1979). The trial court correctly allowed the case to go to the jury.
The jury heard the testimony from both the State and the appellant and chose not to believe the appellant's rendition of the facts and "[t]here is a presumption in favor of the correctness of a jury's verdict". Johnson v. State,378 So.2d 1164, 1169. (Ala.Crim.App.), cert. quashed, 378 So.2d 1173
(Ala. 1979). Thus, the trial court correctly *Page 1172 
denied the appellant's motion for directed verdict.
The appellant further alleges that the defense produced sufficient evidence of self-defense in order to remove consideration of the charge of murder from the jury. The appellant raises this for the first time on appeal; therefore, it is not preserved for our review. Reeves v. State,456 So.2d 1156 (Ala.Crim.App. 1984).
 (II)
The appellant alleges that the trial court committed reversible error by failing to give one of the defendant's requested jury charges. The gist of the appellant's requested charge was that all evidence presented should be considered in the light most favorable to the defendant. The trial court denied the appellant's requested charge and gave the appellant an exception to the Court's refusal to give the charge.
The trial court correctly denied appellant's requested charge "for the reason that it was abstract in that it was a mere statement of legal principle, without instruction as to the effect upon or application to the issues." Lundy v. State,484 So.2d 1132, 1138 (Ala.Crim.App. 1985). See also, McDaniel v.State, 446 So.2d 670 (Ala.Crim.App. 1983).
Furthermore, the trial judge properly explained to the jury the applicable law governing the State's burden of proof and the defendant's presumption of innocence. Thus, we find the trial court correctly denied the appellant's requested charge.
 (III)
The appellant argues that the trial court committed reversible error by failing to sustain his objection to improper arguments by the State's counsel during closing arguments. We are unable to address this contention because it has not been properly preserved for appeal. The record reflects that the appellant made only a general objection, without stating specific grounds; thus, there is nothing preserved for our appellate review. Meadows v. State, 473 So.2d 582
(Ala.Crim.App. 1985); Reeves v. State, 456 So.2d 1156
(Ala.Crim.App. 1984).
In view of our discussion above, we are of the opinion that the decision of the trial court is due to be, and it is hereby, affirmed.
AFFIRMED.
All the Judges concur.