A.D. Sistrunk was convicted of assault in the second degree by the Circuit Court of Houston County, in violation of §13A-6-21, Code of Alabama 1975. He was sentenced to 10 years in the penitentiary. His sentence was to run consecutively with his sentences in other cases, including one for trafficking in controlled substances.
We affirm the trial court.
On January 1, 1990, Adolphus Speight and a friend, Richard Brooks, went to the Centipede Club in Dothan, Alabama. *Page 88 
While they were in the club, Speight saw Rachael Godwin and Brooks's sister, sitting at another table. She left her table to go to the rest room. When she returned, Sistrunk approached her and ran his hand up her dress. Despite Godwin's demand that Sistrunk leave her alone, Sistrunk continued his advances. Brooks interceded and told Sistrunk not to touch his sister. When Sistrunk did not react, Brooks grabbed his sister and took her to his table. They then decided to leave. When they got outside the club, Sistrunk and four other men were waiting for them.
While Sistrunk's friends held Speight, Sistrunk slashed Speight's face with a "box cutter." When Speight collapsed to the ground, Sistrunk and three of his friends proceeded to kick him. The fourth friend held a gun on Brooks, preventing him from coming to Speight's rescue.
Speight was taken to the hospital, where he was treated for several lacerations on his face. He suffered permanent injuries as a result of the assault.
On appeal, Sistrunk raises four issues: first, whether aBatson violation occurred; second, whether the trial court erred in admitting photographs that did not depict the injuries; third, whether the trial court erred in enhancing the sentence under the dangerous instruments provisions of the Alabama Criminal Code; and fourth, whether the State presented insufficient evidence to prove a prima facie case. We will discuss these issues in the order in which they appeared in the appellant's brief.
After Sistrunk made his Batson objection, the following exchange occurred:
 "THE COURT: I understand you have some motions, Mr. Brantley.
 "MR. BRANTLEY: Yes, sir. Your Honor, pursuant to Batson v. Kentucky, I hereby move, Your Honor, to strike these twelve jurors and let us strike again for reasons the State of Alabama has struck juror number forty-three, S.R.H., who is a black female, the reason that she is black. They have struck — that's the only reason.
 "Juror number forty-five, F.L.J., for the reason he is a black, and that's the only reason they struck him.
 "Juror number seventy-eight, M.E.S., for the reason that she is black, and that's the only reason they struck her.
 "I have in my notes that S.R.H. did know the defendant, but that she stated that she could put that beside her — set it aside and she could set her religious reasons aside. I understand she said she could return a fair and honest verdict based on the evidence.
 "F.L.J. stated that he knew the defendant, but there was no showing that he could not set that aside. And there was no — I have no response elicited one way or another from juror number seventy-eight, M.E.S.
 "I would ask that you place those three black jurors on the jury panel and take three white members off, or in the alternative, let us start all over again.
"THE COURT: Mr. Valeska.
 "MR. VALESKA: Judge, Mr. Lamere is going to give the reasons, Your Honor, except I would like to say for S.R.H. that I was up at docket call this morning when she came forward and she said that she had a concern of being on a jury panel because of her religious convictions. Second, she said she knew the defendant. She never said, in response to what Mr. Brantley said, because she knew the defendant she could be fair. What she said, after you asked her, she said that she could put her religious convictions aside and be fair, but based on she had a concern with religious conviction and she came forward this morning, as well as knowing the defendant, that was the reason we struck her.
 "I will let Mr. Lamere tell you the other two, Judge.
 "MR. LAMERE: Number forty-five, F.L.J., as the Court is well aware, prior to jury week, we sent our jury lists around. We had information from Lewis Miller at the Dothan Police Department that F.L.J. is involved with drug activity. He knows him through his police work and he stated he would be biased toward *Page 89 
the State and he felt he would be a bad juror for the State. He also, number forty-five, indicated during the voir dire that he knew the defendant and his father lives around the corner from the defendant and he had seen him within the last six months. He also knew a defense witness, Darren Marshall, through the same living in that area. For those reasons, we struck number forty-five F.L.J.
 "The other one, number seventy-eight, M.E.S., the reason that she was struck is Sergeant Mathis, who I believe is in the courtroom now — for the record, he is a black male. He is a jailer for the Houston County Sheriff's Department. He indicated that he knew her or knew of her and stated that from his knowledge, she had been involved in drugs in the past and that she hangs around with a bad crowd and he felt she would be biased towards the State and would not be a good juror for the State. For that reason, I struck her.
 "MR. VALESKA: One other thing on M.E.S. It was brought to our attention that earlier today she approached the cage and had conversation with the defendants who were inside the cage, conversations took place. We don't know what those conversations were, but none of the other jury panel actually went up to the cage like M.E.S. did."
The trial judge found that the reasons for striking juror 45, F.L.J., and juror 78, M.E.S., were sufficiently race neutral and did not violate Batson, but he found that the reason striking juror S.R.H. was not race neutral. Subsequently, he reversed his ruling by stating:
 "THE COURT: Let the record show that Court has conducted further voir dire of S.R.H. and that S.R.H. is first cousins to a witness in this case. And S.R.H., even though she has stated that she could listen to the evidence, has further stated — let me rephrase it.
 "Even though she has stated she could listen to the evidence and make a fair and impartial decision and set aside her religious preference, she still expresses reservations and says her conscience would bother her in this case. And I think she indicated that if she looked at the pictures of the alleged victim that it would bother her as too biased toward the defendant. So on all those grounds, I feel that I have conducted as much voir dire as can be done and I'm going to deny the Batson motion."
A recent case decided by the United States Supreme Court,Hernandez v. New York, ___ U.S. ___, 111 S.Ct. 1859,114 L.Ed.2d 395 (1991), stated:
 "In evaluating the race-neutrality of an attorney's explanation, a court must determine whether, assuming the proffered reasons for the peremptory challenges are true, the challenges violate the Equal Protection Clause as a matter of law. A court addressing this issue must keep in mind the fundamental principle that 'official action will not be held unconstitutional solely because it results in a racially disproportionate impact. . . . Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause.' ' "Discriminatory purpose" . . . implies more than intent as volition or intent as awareness of consequences. It implies that the decision-maker . . . selected . . . a particular course of action at least in part "because of," not merely "in spite of," its adverse effects upon an identifiable group.'
 "A neutral explanation in the context of our analysis here means an explanation based on something other than the race of the juror. At this step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.
". . . .
 "Once the prosecutor offers a race-neutral basis for his exercise of peremptory challenges, '[t]he trial court then [has] the duty to determine if the defendant has established purposeful discrimination.' . . .
". . . . *Page 90 
 "Deference to trial court findings on the issue of discriminatory intent makes particular sense in this context because, as we noted in Batson, the finding will 'largely turn on evaluation of credibility.' In the typical peremptory challenge inquiry, the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed. There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge. As with the state of mind of a juror, evaluation of the prosecutor's state of mind based on demeanor and credibility lies 'peculiarly within a trial judge's province.' "
(citations omitted.)
To succeed in his Batson challenge, Sistrunk has to prove a discriminatory intent by the district attorney, plus he must show the court's finding on the issue of discriminatory intent to be clearly erroneous. Cf. Ex parte Branch, 526 So.2d 609
(Ala. 1987). Sistrunk failed to make those showings. The record clearly shows that Batson was not violated.
The second issue raised by Sistrunk concerning the authenticity of the photographs admitted at trial is without merit. At the trial, when the photographs were offered, Sistrunk's objection was, "Judge, we don't know who took thepictures." On appeal, Sistrunk objects on the ground that the photographs do not accurately depict Speight's injuries. This objection has not been preserved for review. The specific objection made at the trial waived all grounds not specified.Cobb v. State, 548 So.2d 620 (Ala.Cr.App. 1989); Berry v.State, 408 So.2d 548 (Ala.Cr.App. 1981), cert. denied,408 So.2d 551 (Ala.), cert. denied, 456 U.S. 934, 102 S.Ct. 1989,72 L.Ed.2d 453 (1982).
Sistrunk's third issue, whether the trial court erred by sentencing him to 10 years because the assault statute already provided for enhancement, was not preserved for review. The sentence announced on September 9, 1991, by the trial court was not objected to by Sistrunk. All he did was to give notice of appeal. Thus, Sistrunk has not preserved this issue for review on appeal, and it is, therefore, not before this court.Johnson v. State, 480 So.2d 14 (Ala.Cr.App. 1985).
Finally, Sistrunk contends that there was insufficient evidence to sustain his conviction for assault in the second degree. This contention is without any merit. Speight, the victim, testified that Sistrunk cut him several times with a box cutter. He further testified that he went to the hospital and that he was treated by Dr. Charles Feagin.
In reviewing this issue, we look at the evidence in the light most favorable to the State. Carr v. State, 551 So.2d 1169
(Ala.Cr.App. 1989); Cumbo v. State, 368 So.2d 871 (Ala.Cr.App. 1979), cert. denied, Ex parte Cumbo, 368 So.2d 877 (Ala. 1979). We conclude, after review of the evidence under these authorities, that there was sufficient evidence to convict Sistrunk of second degree assault.
The foregoing opinion was prepared by the Honorable James H. Faulkner, a former Supreme Court Justice, and his opinion is hereby adopted as that of the court.
The trial court is affirmed.
AFFIRMED.
All the Judges concur.